### STATE v. BERLIN BLUE.

(Filed 21 May, 1941.)

**1. Criminal Law § 53e—**

C. S., 564, prohibits the court in its charge to the jury from expressing any opinion as to the weight and credibility of the evidence, and, defendant having pleaded not guilty, it is error for the court to charge the jury in effect that the fact of guilt is established by the evidence, even though the evidence be uncontradicted and even though the fact of guilt may be inferred from defendant's own testimony, since the credibility of the evidence is in the exclusive province of the jury.

**2. Criminal Law § 28a—**

Upon defendant's plea of not guilty, the presumption of innocence attaches and follows defendant until removed by the verdict of a jury.

**3. Criminal Law § 17—**

A plea of not guilty not only puts in issue the question of defendant's guilt but also the credibility of the evidence.

**4. Homicide § 15—**

In this State a defendant will not be permitted to plead guilty to murder in the first degree, C. S., 4642, and this rule applies to all indictments for murder, including murder perpetrated by means of poison, lying in wait, imprisonment, starving, torture or otherwise, C. S., 4200.

**5. Homicide § 27b—**

In a prosecution for murder, an instruction to the effect that defendant's own evidence established guilt of murder committed by means of lying in wait which constitutes murder in the first degree under the statute, C. S., 4200, and that defendant had admitted every essential element of the offense, except the question of mental capacity relied on by him, *is held* for error as an expression of opinion on the evidence prohibited by C. S., 564, since under defendant's plea of not guilty the credibility of the evidence, including defendant's own testimony, is in the exclusive province of the jury.

Appeal by defendant from *Grady, Emergency Judge,* at January-February Term, 1941, of Robeson.

Criminal prosecution upon indictment charging defendant with murder of one Anderson Clark.

Plea: Not guilty.

Evidence for the State in the trial below tends to show in brief these facts: Anderson Clark was shot in the head and killed about 8 o'clock on the night of 30 November, 1940, while he was sitting before the fire talking with his wife's brother and another in a room in the home of Elpalear Locklear, an aunt of his wife and of defendant, with whom defendant resided. The shot was fired from outside the house through a window, where a pasteboard substituted for a pane had been removed, about eight feet from Clark. Clark, who resided with his father-in-law in "hollering distance" of the Locklear home, had come there with his brother-in-law, James Blue. Soon thereafter defendant came in and stood before the fire and for a few minutes talked with them and another sitting there, and then left the room. In ten, fifteen or twenty minutes thereafter the shot was fired. Immediately afterward defendant Berlin Blue, a sixteen-year-old Indian boy, who is the son of a deceased brother of Elpalear Locklear and a first cousin to wife of Anderson Clark, told his aunt "I done it." When the officers came about an hour later he told them that he shot Anderson Clark because "he has been picking on me, cussing me and threatening killing me."

Elpalear Locklear, testifying for the State and speaking of defendant, said: "Seemed like he had more the mind of a child than he had of a grown person . . . he has got awfully childish ways. . . . I do not have an opinion whether he knows right from wrong."

Dr. H. M. Baker, testifying at length as witness for defendant, gave as his opinion that the defendant is of the mental capacity of the age of ten years, and that he is not fully aware of the consequence of his acts. The doctor stated: "I do not think he knows the consequences now . . . and I do not think it has occurred to him that he has committed any wrong."

Defendant, as witness for himself, states that he had seen Anderson Clark that night at Fred Blue's, about a quarter of a mile from the Locklear home, and Clark had said "he was going to kill me"; that when the defendant returned home Clark was there; and that when he entered the room, "Anderson got up and grabbed me a-holt . . . grabbed me with one hand, and he had one hand in his bosom, and said he was going to kill me . . . I snatched away from him and went out in the other room . . . I got the gun and then went out and shot him . . . from out doors . . . I was afraid of him, he told me two or three times he was going to kill me."

Verdict: "Guilty of the felony and murder as charged in the bill of indictment, in the first degree."

Judgment: Death by asphyxiation.

Defendant appeals to Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State.*

*John G. Proctor and F. D. Hackett for defendant, appellant.*

WINBORNE, J.   Upon the trial in Superior Court the court, in charging the jury, read the provisions of the statute, C. S., 4200, that "A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed to be murder in the first degree and shall be punishable by death," and stated that where the killing is by any of the means defined in this statute the element of premeditation and deliberation is presumed.   Then the court proceeded to give the following instructions which defendant assigns for error:

"Now, in this case, gentlemen, and I want you to listen at me carefully, in this case the defendant, the prisoner at the bar has gone upon the stand, and he has admitted that the deceased, Anderson Clark, was sitting in a room in a house which was his home; that two or three other people were in the room; that Anderson Clark was sitting in a rocking chair with both of his hands thrust in the jacket of his overalls; that at that particular time he was not doing anything at all in aggravation, or anything at all which would have caused the defendant to think that

he was going to harm him; that he went out into the kitchen and took down a shot gun and inserted in that shot gun a cartridge, which he had bought a few days prior thereto; that he then went around the house to a window where one of the sash, where one of the lights had been knocked out and where a piece of card board had been substituted in the place of the light; that he removed that card board, placed his gun through the sash, and blew this man's brains out, killing him instantly." Exception No. 12.

"I charge you, gentlemen, upon that statement from the defendant, nothing else appearing, he is guilty of murder in the first degree, because the method of the killing admitted by him, comes directly and exactly within the purview of the statute which I have just read to you." Exception No. 13.

"Now, there is no need of my referring to the testimony of other witnesses, because the defendant himself has admitted every single element which goes to make up the crime of murder in the first degree except one, and that is, gentlemen, he contends, and his only defense as argued to you through counsel, is that at the time of the killing he did not have mental capacity sufficient to premeditate and deliberate, and that at most you can only convict him of murder in the second degree." Exception No. 14.

Defendant contends that the charge as thus given by the court is violative of the provision of the statute, C. S., 564, which provides that: "No judge, in giving a charge to the petit jury, either in a civil or criminal action, shall give an opinion whether a fact is fully or sufficiently proven, that being the true office and province of the jury . . ." C. S., 564. With this contention we agree. See *S. v. Dixon,* 75 N. C., 275; *S. v. Riley,* 113 N. C., 648, 18 S. E., 690; *S. v. Green,* 134 N. C., 658, 46 S. E., 761; *S. v. Hill,* 141 N. C., 769, 53 S. E., 311; *S. v. Langley,* 204 N. C., 687, 169 S. E., 705; *S. v. Maxwell,* 215 N. C., 32, 1 S. E. (2d), 125.

Speaking thereto in the case of *S. v. Dixon, supra,* the Court said: "This statute is but an affirmance of the Constitution, Art. I, sections 13-17, and the well settled principles of the common law, as set forth in Magna Charta. The jury must not only unanimously concur in the verdict, but must be left free to act according to the dictates of their own judgment. The final decision upon the facts rests with them, and any inference by the court tending to influence them into a verdict against their convictions is irregular and without the warrant of law. The judge is not justified in expressing to the jury his opinion that the defendant is guilty upon the evidence adduced . . . If, in the case before us, the evidence had made a clear case of guilt against the prisoner, still its credibility was for the jury, and it should have been so submitted

to them by the court, for they must say whether they believe or disbelieve it." S. v. Hill, supra.

Again, in the Hill case, supra, Hoke, J., writing for the Court, states: "When a plea of not guilty has been entered and stands on the record undetermined, it puts in issue not only the guilt, but the credibility of the evidence. As is said in S. v. Riley, 113 N. C., 648, 'The plea of not guilty disputes the credibility of the evidence, even when uncontradicted, since there is a presumption of innocence which can only be overcome by a verdict of a jury' . . . And this has been held to be the correct doctrine, though guilt may be inferred from the defendant's own testimony as in S. v. Green, 134 N. C., 658."

In S. v. Langley, supra, it is stated that the credibility and probative force of the evidence is for the jury. And in S. v. Maxwell, supra, Schenck, J., writing for the Court, uses this language: "The defendant had pleaded not guilty and the presumption of innocence followed him until removed by the verdict of the jury . . . the credibility of the testimony being for the jury to determine." And, further, "Under our system of trial the judge is prohibited from expressing an opinion as to defendant's guilt," citing and quoting from S. v. Dixon, supra.

Moreover, in this State a defendant will not be permitted to plead guilty to murder in the first degree. It is provided in C. S., 4642, that "the jury before whom the offender is tried shall determine in their verdict whether the crime is murder in the first or second degree." In S. v. Matthews, 142 N. C., 621, 55 S. E., 342, the Court states that this section applies equally to all indictments for murder, whether perpetrated by means of poison, lying in wait, imprisonment, starving, torture or otherwise." C. S., 4200. See, also, S. v. Bazemore, 193 N. C., 336, 137 S. E., 172.

Applying these principles to the facts in the present case, it is manifest that the portions of the charge to which the exceptive assignments relate are contrary to the law as declared in this State, and infringe upon substantive rights of the defendant. The court, instead of leaving it to the jury to pass upon the credibility of the evidence and to find from the evidence beyond a reasonable doubt all of the elements necessary to constitute the crime of murder in the first degree, in effect passes upon the credibility, and finds or assumes the facts to be as testified by defendant, and rules that the statement of defendant constitutes an admission of "every single element which goes to make up the crime of murder in the first degree, except one," that is, "that at the time of the killing he did not have mental capacity sufficient to premeditate and deliberate." Thus the jury is told that in order to convict defendant of murder in the first degree the only factual element left for it to find is that defendant

had mental capacity sufficient to premeditate and deliberate. This is contrary to law in the State, and is error, for which defendant is entitled to a

New trial.